IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| HAYWOOD M. CLAYTON | ) | |
| and SYLVIA CLAYTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:02CV00415 |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY; | ) | |
| LAWRENCE S. MAITIN; and MORRIS, | ) | |
| SCHNEIDER & PRIOR, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

This case arises between Plaintiffs Haywood and Sylvia Clayton ("the Claytons") and Defendant Ameriquest Mortgage Company[1] ("Ameriquest") and is currently before the Court on the following motions:

1. Plaintiffs' Motion for a Change of Venue [Doc. #176],

2. Plaintiffs' Motion to Vacate Orders [Doc. #183] ("Motion to Vacate"),

3. Plaintiffs' Motion for Relief from Order of This Court [Doc. #187] ("Motion for Relief"), and

4. Plaintiffs' Motion for Stay on Motion for New Judgment [Doc. #189] ("Motion for Stay").

Also currently pending are Defendant Ameriquest's Motion to Show Cause

---

[1] Ameriquest Mortgage Company ("Ameriquest") is the only remaining defendant.

Why Plaintiffs Should Not Be Held in Civil Contempt [Doc. #171] ("Motion to Show Cause") and Motion for a Pre-Filing Injunction Against Plaintiffs [Doc. #174].

For the reasons which follow, Plaintiffs' Motion to Vacate, Motion for Relief, and Motion for Change of Venue will be DENIED. Plaintiffs' Motion for Stay is thereby rendered MOOT. Defendant's motion to show cause and motion for a pre-filing injunction will be addressed at a later date in a hearing to be noticed by the court.

I.

This case relates to a promissory note executed by the Claytons and a deed of trust on their Chapel Hill, N.C. residence which secured the note held by Defendant Ameriquest. Seeking to forestall foreclosure and to obtain other relief, the Claytons filed suit in both this Court (1:02CV00415 was filed on May 28, 2002) ("415" or "the 415 case") and in state court. When Ameriquest noticed foreclosure, Mr. Clayton removed the state foreclosure action to this court (1:02CV00453) ("453") on June 10, 2002. Both cases (415 and 453) were assigned to United States District Judge James A. Beaty, Jr., who, finding a lack of federal jurisdiction, remanded the 453 forfeiture case to the Orange County Superior Court on July 5, 2002. On July 8, 2002, the Claytons filed a motion in the 415 case [Docs. #8, 9] seeking a temporary restraining order ("TRO") preventing the foreclosure which had been set for July 11, 2002, in Orange County, North Carolina. The motion was submitted to Judge Beaty on July 9th

2

and he entered an order [Doc. 10] on July 10, 2002, granting the TRO, contingent upon the posting of a $5,000 bond. Notice of the order was given telephonically by the office of the Clerk of this Court to the Claytons on July 10th and the written order was faxed to the Claytons and to the Clerk of Court of Orange County on July 11th. Rather than post the bond with this Court, Mr. Clayton appeared in the Superior Court of Orange County on July 11th seeking an order restraining the foreclosure. According to Mr. Clayton, Judge Rand, the state judge, offered to recuse hiimself, stating that he had formerly been a lawclerk for Judge Beaty. From that statement, Mr. Clayton infers that there must have been some bias against him on the part of both Judge Rand and Judge Beaty. (Doc. 150; Trans. of Nov. 25, 2003 hearing)

When Judge Rand did not grant a state TRO, Mr. Clayton -- on that same day, July 11, 2002 -- filed a bankruptcy petition, triggering the automatic stay provision and, thereby, halting the scheduled foreclosure sale. The Claytons' appeal of the Bankruptcy Judge's dismissal of that petition with sanctions was docketed in this Court as 1:03CV0083 and assigned to Judge Beaty.

This case, the 415 case, proceeded on a tortuous track with a number of motions and responses being filed by both parties. After discovery was completed, the case was set for an October 6, 2003 trial. Notice was given to the parties on August 25, 2003 that a settlement conference would be held in Greensboro at 10 A.M. on September 23rd. On September 22nd, the Claytons moved for a change

3

of venue and/or the recusal of Judge Beaty [Doc. #134] based on the ground -- stated on September 22, 2003 for the first time -- that Judge Rand's statement on July11, 2002 indicated some bias held by him and Judge Beaty.[2]

During the settlement conference on September 23rd, the Claytons entered into a settlement agreement with Ameriquest, the terms of which the parties read into the record before Judge Beaty. The Claytons did not mention during that proceeding that they had filed a motion the previous day seeking to have Judge Beaty recuse himself. [Doc. #149]

The Claytons failed to comply with the terms of that agreement, however, and on October 6, 2003, Ameriquest filed a Motion to Enforce Settlement Agreement [Doc. #141]. On November 25, 2003, during a hearing on that and other motions, including the motion for recusal, Judge Beaty recused himself, stating that while "there's no reasonable basis for it, just the perception that Mr. Clayton has raised [is] sufficient for this Court to recuse itself in this matter." [Doc. #150, Trans. p. 65].

Following Judge Beaty's recusal, the undersigned held a hearing on December 12, 2003, to address Ameriquest's Motion to Enforce the Settlement

---

[2]A review of the 415 case docket sheet reveals that between July 11, 2002 and the filing of the recusal motion on September 22, 2003, the Claytons had filed sixteen motions, nine briefs, four notices, eight responses, and five objections, including an objection to Ameriquest's present counsel being added to the case on the ground that allowing Ameriquest another attorney would be unfair since the Claytons were proceeding *pro se*. (Doc. 40).

4

Agreement. On April 5, 2004, the Court issued a Memorandum Opinion [Doc. #155] and Order [Doc. #156] granting Ameriquest's motion. The parties were ordered to take the following actions to effectuate the terms of the settlement agreement:

> (1) withdraw any and all motions for sanctions;
> (2) withdraw any and all motions for attorneys' fees;
> (3) withdraw any and all motions to vacate or amend orders;
> (4) file voluntary dismissals of any and all appeals filed in this dispute;
> (5) file notices of satisfaction of judgment as to any outstanding judgments;
> (6) file notices of waiver of any attorneys' fees that have already been awarded; and
> (7) file voluntary dismissals with prejudice as to all claims.

Order of April 5, 2004, at 1 [Doc. #156].

On April 15, 2004, the Claytons filed a motion [Doc. #158] requesting reconsideration and/or an amendment of the April 5 Order. The motion for reconsideration was denied in a Memorandum Order issued June 18, 2004 [Doc. #162]. The Claytons appealed both the April 5 Order and the June 18 Order [Doc. #165].[3] The Court of Appeals for the Fourth Circuit affirmed the Orders on December 29, 2004 [Doc. #186].

In October 2004 Ameriquest filed the Motion to Show Cause and Motion for Pre-Filing injunction, and in November 2004 the Claytons filed the Motion for Change of Venue and Motion to Vacate, all of which are currently before the Court.

---

[3] The Claytons also filed a Motion for Stay Pending Appeal [Doc. #163] asking that the April 5 Order be stayed while they appealed it and the June 18 Order. The Motion for Stay was denied in a Memorandum Order issued August 17, 2004 [Doc. #169].

5

On January 10, 2005, the Claytons also filed the Motion for Relief and the Motion for Stay that are now pending.

II.

The Motion to Vacate the September 23, 2003, settlement agreement [Doc. #183] and the Motion for Relief from the Order of April 5, 2004, enforcing the settlement agreement [Doc. #187] are the most recent of the Claytons' several attempts to avoid their settlement agreement with Ameriquest. They opposed Ameriquest's motion to enforce the agreement [see Doc. #146]. After the Order of April 5, 2004 ("April 2004 Order") enforcing the settlement agreement was issued, they filed a motion for reconsideration of the Order [#158] (which was denied); they appealed the April 2004 Order [Doc. #165] (the Order was affirmed by the Court of Appeals); and filed a motion in this Court [Doc. #163] and with the Court of Appeals to stay the April 2004 Order pending appeal (both motions were denied). On November 26, 2004, the Claytons filed the currently pending Motion to Vacate the settlement agreement of September 23, 2003. On January 10, 2005 (after the April 2004 Order had been upheld on appeal) the Claytons filed the currently pending Motion for Relief from the April 2004 Order. On none of those occasions was there a suggestion that any of Judge Beaty's orders had been affected by bias.

In their Motion to Vacate, Plaintiffs ask generally that the Court vacate "orders entered in this matter by District Court Judge James Beaty" and then

6

specifically ask for "an order vacating the settlement agreement approved by Judge Beaty on 23 September 2003."[4] (Pls.' Mot. Vacate Orders at 1, 3.) They assert that they are entitled to such relief under Federal Rule of Civil Procedure 60(b)(6). In their Motion for Relief, Plaintiffs ask for relief from operation of the Order entered by this Court on April 5, 2004 [Doc. #156] that granted Defendant's Motion to Enforce the Settlement Agreement and ordered the parties to comply with the terms of the settlement agreement as set out in the transcript of the proceedings of September 23, 2003. Plaintiffs' Motion for Relief relies on Rule 60(b)(2), (3), and (6).

Rule 60(b) states that a court may relieve a party from a final judgment, order, or proceeding for various reasons including under 60(b)(2) "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)," under 60(b)(3) "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party," or under 60(b)(6) "any other reason justifying relief from the operation of the judgment." To prevail in a motion seeking relief under 60(b), a

---

[4] Although they ask for relief from all orders entered by Judge Beaty, Plaintiffs presumably are not seeking relief from Judge Beaty's recusal from this case on November 25, 2003: "It is the failure of Judge Beaty to voluntarily recuse prior to November 25, 2003, which forms the basis for this motion to vacate" (Id. at 4). The Plaintiffs' chief concern in the Motion to Vacate appears to be relief from the settlement agreement they entered into with Ameriquest on September 23, 2003, the terms of which they read into the record before Judge Beaty. In any event, because this motion will be denied, all Orders entered by Judge Beaty will stand.

7

movant must first show that he has met three "threshold conditions." National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993). He "must show [1] that his motion is timely, [2] that he has a meritorious defense to the action, and [3] that the opposing party would not be unfairly prejudiced by having the judgment set aside." Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987).

If all three threshold conditions are met, the analysis proceeds to a second stage in which the court must determine whether the movant has satisfied one or more of the six grounds for relief in 60(b)(1)-(6). Werner v. Carbo, 731 F.2d 204, 207 (1984). Once the movant has satisfied all the elements of the first and second stages of this analysis, the "court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case." Square Constr. Co. v. Washington Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981).

A.

1.

Plaintiffs' Motion to Vacate the settlement agreement cannot be granted, because Plaintiffs have failed to meet the threshold condition of timeliness. Rule 60(b) requires that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgement, order, or

8

proceeding was entered or taken." Fed. R. Civ. P. 60(b). Courts must determine what is a "reasonable time." The movant bears the burden to show timeliness and must offer a "satisfactory explanation" for any delay. Central Operating Co. v. Util. Workers of Am., 491 F.2d 245, 253 (4th Cir. 1974). The Fourth Circuit has upheld denials of 60(b) motions that were filed as little as two and one-half months after entry of the judgment or order from which relief was sought. Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967); see also McLawhorn v. John W. Daniel & Co., 924 F.2d 535, 538 (4th Cir. 1991) (three and one-half months); Central Operating Co. v. Util. Workers of Am., 491 F.2d 245, 253 (4th Cir. 1974) ("almost four months"); Jones v. Richmond, 106 F.R.D. 485, 490 (E.D. Va. 1985) (discussing Central Operating and Consolidated Masonry and denying as untimely 60(b) motion filed "over three months" after movant received notice of grounds for the motion).

The Motion to Vacate was not filed within a reasonable time as required by Rule 60(b). The Claytons filed the Motion on November 26, 2004–fourteen months after the settlement agreement was reached. Furthermore, the event which is the stated basis that Judge Beaty was biased against the Claytons, that is, the hearing in North Carolina Superior Court on July 11, 2002, occurred two years and four months before they filed this Motion to Vacate and fourteen months

9

before they filed the motion for Judge Beaty to recuse himself.[5] The Claytons have not offered a satisfactory—or indeed any—explanation for their decision to wait such a protracted period before raising the question and have, thus, failed to make the threshold showing that the motion was made "within a reasonable time." The Motion to Vacate Orders will be DENIED.

2.

Even if the Claytons had satisfied the threshold condition of timeliness, their Motion to Vacate would not be granted because they have not shown that this is a case meriting relief under Rule 60(b)(6). A motion under 60(b)(6) may be granted only upon the movant's showing "extraordinary circumstances." Klapprott v. United States, 335 U.S. 601, 613 (1949); Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004). The burden is on the Plaintiff to show that extraordinary circumstances exist, and "it should be no surprise that for a movant's case to succeed, the material offered in support of his Rule 60(b)(6) motion must be highly convincing." Holland v. Virginia Lee Co., Inc., 188 F.R.D. 241, 252 (W.D. Va.

---

[5] This case is therefore distinguishable from Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988). In that case, Health Services Acquisition Corporation (HSAC) filed a 60(b)(6) motion for relief from a judgment entered following a bench trial on the grounds that the presiding judge should have disqualified himself due to a conflict of interest. HSAC's 60(b)(6) motion was allowed even though it was filed approximately ten months after the judgment had been affirmed on appeal. In contrast to the instant case, however, Liljeberg was "not a case involving neglect or lack of due diligence by [movant]." 486 U.S. at 864 n.11. HSAC had no way of learning of the conflict of interest any earlier than it did, and filed the motion promptly upon discovering the conflict. Id.

10

1999) (internal quotations omitted). The Plaintiffs simply rely on their own sweeping statements that there was some sort of bias against them, but offer no evidence in support of their assertion. They have not offered any showing, much less any highly convincing showing, in support of their claim of bias. They have not pointed out how any alleged bias would have affected their ability to enter freely into settlement with Ameriquest. Nor do they explain how Judge Rand's July 11, 2002, statement that he had been Judge Beaty's lawclerk could have shown that Judge Beaty was biased against the Claytons, especially in view of Judge Beaty's having granted their ex parte motion for a TRO on July 10, 2002. While the Claytons have suggested that Judge Beaty's recusal was an acknowledgement of bias, a reading of the transcript from the November 25, 2003 hearing [Doc. #150] shows otherwise. Judge Beaty could not understand, nor could the Claytons explain, how or why Judge Rand would have been biased against them. Judge Beaty disavowed any bias on his part, found there was no reasonable basis for the suggestion of bias, but then recused himself solely because of the Claytons' perception.

In denying a motion under 60(b)(6) challenging an order that enforced a settlement agreement, the Fourth Circuit observed, "strategic decisions made during the course of litigation provide no basis for relief under 60(b)(6), even though with hindsight they appear [to the movant to be] wrong." Schwartz v. United States, 976 F.2d 213, 218 (4th Cir. 1992). In deciding to enter into a

11

settlement agreement, "[a] litigant weighs the chance of success against the probable cost of achieving that success through further litigation, all based on whatever limited information is available at the time." Id. As the Supreme Court has observed, "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." Ackermann v. United States, 340 U.S. 193, 198 (1950). This settlement agreement was entered into freely, and has already been scrutinized by the undersigned District Judge and by the Fourth Circuit. The Claytons have not shown that there are any extraordinary circumstances justifying its being vacated. The Motion to Vacate must accordingly be DENIED.

B.

Plaintiffs' Motion for Relief from the April 2004 Order enforcing the September 23, 2003, settlement agreement must also be denied. The Claytons have not satisfied the threshold condition of timeliness. Furthermore, even if all threshold conditions had been met, the Claytons' claims do not survive the second stage of the 60(b) analysis in that they do not make out grounds for relief under 60(b)(2),(3), or (6).

Although the Motion for Relief relies only on Rule 60(b)(2), (3) and (6) and presumably seeks relief from the April 2004 Order, the Claytons ask much more than that the Court vacate the April 2004 Order. They ask the Court to (1) find "that Ameriquest agreed to dismiss all their claims under 03-SP-125 under the

12

agreement of 09/23/03" and "that Ameriquest failed to dismiss those claims creating an impasse in efforts with Plaintiffs to reduce the agreement to writing," (2) "[i]ssue an order that Ameriquest produce to the Plaintiffs and the Court copies of all documents, checks and other writings between Ameriquest and Trustee Barden Cooke in the matter 03-SP-125 and the property located at 1147 Burning Tree Drive, Chapel Hill, NC," (3) "[i]ssue an order that Ameriquest furnish Plaintiffs required tax forms from property receive in 2003," (4) find that "material facts were withheld from plaintiffs during the settlement conference" and that the resulting settlement is void, (5) vacate the Order of April 5, 2004, (6) "[i]ssue an order indicating that Barden Cooke was not a party or beneficiary of any agreement or order of this court in this instant action," and (7) impose "monetary sanctions for damages to the Plaintiffs in an amount sufficient to deter repetition of the fraud upon the Plaintiffs and the court." (Pls.' Br. Supp. Mot. for Relief at 9.) The Claytons also "request relief from the order of April 5, 2004 (Doc. #156) based upon its vague and ambiguous order that all claims known or unknown be dismissed. . . ." (Id. at 8.) Finally, in their reply brief, the Plaintiffs ask that "the illegal 'settlement' [of September 23, 2003] be voided as contrary to law." (Pls.' Reply Br. Reply Br. to Def.'s Resp. [Doc. #194] at 7.)

1.

The Clayton's Motion for Relief does not meet the threshold condition of timeliness. Although the Claytons have purportedly filed this Motion asking for

13

relief from the April 2004 Order, they are in fact requesting relief from the settlement agreement of September 23, 2003. None of the Claytons' claims of wrongdoing or "newly discovered evidence"[6] relate to the April 2004 Order. In fact, they all attempt to take issue with some aspect of the settlement agreement. This is borne out by their asking the Court to find that agreement void (see, e.g., Pls.' Br. Supp. Mot. for Relief at 9; Pls.' Reply Br. to Def.'s Resp. [Doc. #194] at 3, 7) and by the fact that the Plaintiffs themselves refer to Ameriquest's "[p]ost 23 Sep 03 [a]ctions" (Doc. #194 at 2) and "[e]vents. . .[s]ince Sep 23, 2003" (Pls.' Br. Supp. Mot. for Relief at 2) in making their arguments. The Motion for Relief was filed on January 10, 2005, within one year after the April 2004 Order, but more than two years after the agreement it seeks to void. As with the Motion to Vacate, the Claytons have not offered a satisfactory explanation for the lengthy delay. The Motion for Relief must be DENIED as untimely.

2.

Even if the Motion for Relief had been timely filed, the Claytons have not shown that they are entitled to relief under 60(b)(2), (3), or (6). In order to obtain relief under 60(b)(3) a moving party must "prove misconduct by clear and convincing evidence" and establish that "the misconduct prevented the moving

---

[6] As discussed more fully in part II.B.2., infra, the supposedly "newly discovered evidence" was actually available to the Claytons at the time of settlement; their claims that the information was only recently available are without merit and therefore have no bearing on the timeliness consideration.

14

party from fully presenting its case." Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir. 1994). In order to support a motion under 60(b)(2), a party must demonstrate:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

Boryan v. United States, 884 F.2d 767, 771 (citation omitted). The movant must show "not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." Id. (quotation and citation omitted). Thus, evidence that was available to the movant prior to the entry of judgment "as a matter of law" cannot be grounds for granting a 60(b)(2) motion. Id. "The 'newly discovered evidence' provision of Rule 60(b)(2) is aimed at correcting an erroneous judgment stemming from the unobtainability of evidence. Consequently, a party seeking a new trial under Rule 60(b)(2) must show that the missing evidence was 'of such a material and controlling nature as [would] probably [have] changed the outcome.'" Schultz, 24 F.3d at 631 (alteration in original; internal citation omitted). As already noted, a motion under 60(b)(6) may only be granted upon the movant's showing "extraordinary circumstances," Klapprott v. United States, 335 U.S. 601, 613 (1949); Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004).

15

The Claytons do not separate their arguments among 60(b)(2), (3), and (6), and therefore the contentions are addressed jointly here. The Claytons have failed to show that any newly discovered evidence, fraud or misconduct, or extraordinary circumstances are present in this case. The allegedly newly discovered evidence, which also forms the basis for the Claytons' allegation of fraud, relates to Ameriquest's credit bid at the foreclosure sale on September 5, 2003. This information was available to the Plaintiffs, and certainly could have been uncovered with the exercise of reasonable diligence on their part. (<u>See, e.g.</u>, Def.'s Resp. to Pls.' Mot. for Relief [Doc. #193] at 8 and Exs. C, D, F.) The Claytons' allegation that Ameriquest somehow violated the settlement agreement and/or defrauded them by not providing them with the proper tax forms similarly does not support 60(b) relief. The April 2004 Order does not even address the question of tax forms, so it is unclear how this allegation has any bearing on the Motion for Relief from that Order; nor were the tax forms at issue (Forms 1098 and 1099-A) mentioned in the settlement agreement. Even if the failure to provide tax forms did constitute a violation of the settlement agreement, which it does not, it would not form the basis for relief under 60(b)(2), (3), or (6). Most importantly, however, the Claytons' allegations fall far short of showing that Ameriquest engaged in misconduct that "prevented the moving party from fully presenting its case."

16

Schultz, 24 F.3d at 631.[7]  The Claytons have not shown that there are grounds for relief under 60(b)(2),(3), or (6), and the Motion for Relief must be DENIED.

III.

The Claytons have also filed a Motion for a Change of Venue [Doc. #176] pursuant to 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2005).  The Plaintiffs again argue in support of this Motion that the Court in the Middle District of North Carolina are biased against them but have offered no showing of extrajudicial bias to support that argument.  They have not shown that the Middle District of North Carolina is an inconvenient venue for the parties, or that the Eastern District of Virginia, the forum in which they now wish to be heard, is a proper or more convenient venue.  This Motion for Change of Venue is completely without merit and will be DENIED.

IV.

A hearing is being scheduled to consider Ameriquest's motions for a finding of civil contempt and for entry of a prefiling injunction.

V.

---

[7] In the event the Claytons had further concerns about the tax forms, Ameriquest has offered to furnish the appropriate forms to them.  (Def.'s Supplemental Resp. to Motion for Relief [Doc. #197] at 5.)

17

For the reasons set forth above, the following will be ordered:

1. Plaintiffs' Motion for a Change of Venue [Doc. #176] will be DENIED.

2. Plaintiffs' Motion to Vacate Orders [Doc. #183] ("Motion to Vacate") will be DENIED.

3. Plaintiffs' Motion for Relief from Order of This Court [Doc. #187] ("Motion for Relief") will be DENIED.

4. Plaintiffs' Motion for Stay on Motion for New Judgment [Doc. #189] ("Motion for Stay") is rendered MOOT.

This the day of August 24, 2005

    /s/ N. Carlton Tilley, Jr.
United States District Judge

18

Case 1:02-cv-00415-NCT   Document 200   Filed 08/24/05   Page 18 of 18