IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HAYWOOD M. CLAYTON <br> and SYLVIA CLAYTON, <br><br> Plaintiffs, <br><br> v. <br><br> AMERIQUEST MORTGAGE COMPANY; <br> LAWRENCE S. MAITIN; and MORRIS, <br> SCHNEIDER & PRIOR, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 1:02CV00415 |

MEMORANDUM ORDER

TILLEY, Chief Judge

This case arises between Plaintiffs Haywood and Sylvia Clayton ("the Claytons") and Defendant Ameriquest Mortgage Company[1] ("Ameriquest") and is currently before the Court on Defendant's Motion for a Pre-Filing Injunction Against Plaintiffs [Doc. # 174] ("Motion for Pre-Filing Injunction").

For the reasons set forth below, it shall be ordered that Plaintiffs' Motion for a Pre-Filing Injunction be GRANTED.

I.

This case relates to a promissory note executed by the Claytons and a deed of trust on their Chapel Hill, N.C. residence which secured the note held by Defendant Ameriquest. Seeking to forestall foreclosure and to obtain other relief,

---

[1] Ameriquest Mortgage Company ("Ameriquest") is the only remaining defendant.

the Claytons filed suit in both this Court (1:02CV00415 was filed on May 28, 2002) ("415" or "the 415 case") and in state court. When Ameriquest noticed foreclosure, Mr. Clayton removed the state foreclosure action to this Court (1:02CV00453) ("453") on June 10, 2002. Both cases (415 and 453) were assigned to United States District Judge James A. Beaty, Jr., who, finding a lack of federal jurisdiction, remanded the 453 forfeiture case to the Orange County Superior Court on July 5, 2002. On July 8, 2002, the Claytons filed a motion in the 415 case [Docs. #8, 9] seeking a temporary restraining order ("TRO") preventing the foreclosure which had been set for July 11, 2002, in Orange County, North Carolina. The motion was submitted to Judge Beaty on July 9th and he entered an order [Doc. # 10] on July 10, 2002, granting the TRO, contingent upon the posting of a $5,000 bond. Notice of the order was given telephonically by the office of the Clerk of this Court to the Claytons on July 10th and the written order was faxed to the Claytons and to the Clerk of Court of Orange County on July 11th. Rather than post the bond with this Court, Mr. Clayton appeared in the Superior Court of Orange County on July 11th seeking an order restraining the foreclosure.[2] When Judge Rand, the state judge, did not grant a state TRO, Mr. Clayton -- on that same day, July 11, 2002 -- filed a bankruptcy

---

[2] According to Mr. Clayton, Judge Rand, the state judge, offered to recuse himself, stating that he had formerly been a lawclerk for Judge Beaty. From that statement, Mr. Clayton infers that there must have been some bias against him on the part of both Judge Rand and Judge Beaty. (Doc. # 150; Trans. of Nov. 25, 2003 Hearing.)

2

petition, triggering the automatic stay provision and, thereby, halting the scheduled foreclosure sale. The Claytons' appeal of the Bankruptcy Judge's dismissal of that petition with sanctions was docketed in this Court as 1:03CV0083 and assigned to Judge Beaty.

This case, the 415 case, proceeded on a tortuous track with a number of motions and responses being filed by both parties.[3] After discovery was completed, the case was set for an October 6, 2003 trial. Notice was given to the parties on August 25, 2003 that a settlement conference would be held in Greensboro at 10 A.M. on September 23rd. On September 22nd, the Claytons moved for a change of venue and/or the recusal of Judge Beaty [Doc. #134] based on the ground -- stated on September 22, 2003 for the first time -- that Judge Rand's statement on July 11, 2002 indicated some bias held by him and Judge Beaty.

During the settlement conference on September 23rd, the Claytons entered into a settlement agreement with Ameriquest, the terms of which were read into the record before Judge Beaty. The Claytons failed to comply with the terms of that agreement, however, and on October 6, 2003, Ameriquest filed a Motion to Enforce Settlement Agreement [Doc. #141]. On November 25, 2003, during a hearing on that and other motions, including a motion for recusal [Doc. # 149],

---

[3]A review of the 415 case docket sheet reveals that between July 11, 2002 and September 22, 2003 alone, the Claytons filed sixteen motions, nine briefs, four notices, eight responses, and five objections.

3

Judge Beaty recused himself, stating that while "there's no reasonable basis for it, just the perception that Mr. Clayton has raised [is] sufficient for this Court to recuse itself in this matter." [Doc. #150, Trans. p. 65].

Following Judge Beaty's recusal, the undersigned held a hearing on December 12, 2003, to address Ameriquest's Motion to Enforce the Settlement Agreement. On April 5, 2004, the Court issued a Memorandum Opinion [Doc. #155] and Order [Doc. #156] granting Ameriquest's motion. The parties were ordered to take the following actions to effectuate the terms of the settlement agreement:

> (1) withdraw any and all motions for sanctions;
> (2) withdraw any and all motions for attorneys' fees;
> (3) withdraw any and all motions to vacate or amend orders;
> (4) file voluntary dismissals of any and all appeals filed in this dispute;
> (5) file notices of satisfaction of judgment as to any outstanding judgments;
> (6) file notices of waiver of any attorneys' fees that have already been awarded; and
> (7) file voluntary dismissals with prejudice as to all claims.

(April 5, 2004 Order, at 1 [Doc. #156].)

On April 15, 2004, the Claytons filed a motion [Doc. #158] requesting reconsideration and/or an amendment of the April 5 Order. The motion for reconsideration was denied in a Memorandum Order issued on June 18, 2004 [Doc. #162]. The Claytons appealed both the April 5 Order and the June 18 Order [Doc. #165].[4] The Court of Appeals for the Fourth Circuit affirmed the Orders on

---

[4] The Claytons also filed a Motion for Stay Pending Appeal [Doc. #163] asking that the April 5 Order be stayed while they appealed it and the June 18

December 29, 2004 [Doc. #186].[5]

In addition to the 415 Case, the Claytons have filed numerous other actions in various courts relating to the foreclosure of their home by Ameriquest.[6] Since 2000 the Claytons have filed five bankruptcy cases,[7] each apparently in an attempt to stay the foreclosure of their home.[8] Additionally the Claytons have initiated three separate civil actions, and one bankruptcy adversary proceeding against Ameriquest. (Def.'s Brief in Support of Motion for Pre-Filing Injunction ¶ 2.) Each of these were attempts to stall the foreclosure of the Clayton's home and all have been unsuccessful. Finally, following the April 5, 2004 Order Enforcing Settlement Agreement which ordered the parties to dismiss all claims arising out of the

---

Order. The Motion for Stay was denied in a Memorandum Order issued August 17, 2004 [Doc. #169].

[5] The Claytons also filed a Motion for Change of Venue and Motion to Vacate in November 2004 and Motion for Relief and Motion for Stay in January 2005. All of these motions were either denied or rendered moot in a August 24, 2005 Memorandum Opinion and Order of this Court.

[6] Ameriquest attached a chart to their Motion for Pre-Filing Injunction summarizing the Claytons' cases, filings and their outcomes. The Court takes judicial notice of this chart and the information provided within it. See, e.g., Freshman v. Atkins, 269 U.S. 121, 124 (1925) (a court may take judicial notice of its own records in different, but interrelated, proceedings).

[7] Case Nos. 00-81622, 01-81356, 01-83187, 02-82063, 03-82095.

[8] Sanctions have been imposed against the Claytons for their improper bankruptcy filings, the most recent being an order from the Bankruptcy Court dismissing the case with prejudice, finding abuse of the bankruptcy system and barring Mr. Clayton from re-filing any petition for two years. (Case No. 02-82063, [Doc. # 15]).

5

incident, on September 7, 2004, the Claytons filed another suit in state court against Ameriquest and the substitute trustee.[9] Again, the events that form the basis for this most recent suit are the same as those in the previous cases.

In October 2004 Ameriquest filed a Motion to Show Cause and Motion for Pre-Filing injunction in the 415 case. A hearing was held on September 6, 2005, to address Defendant's Motions. The Court will now consider Defendants' Motion for a Pre-Filing Injunction against Plaintiffs.

II.

The All Writs Act, 28 U.S.C. § 1651 (a), authorizes district courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act authorizes district courts to "restrict access to federal courts of parties who repeatedly file frivolous litigation." Armstrong v. Koury Corp., 16 F. Supp. 2d 616, 620 (M.D.N.C. 1998); see also In re Burnley, 988 F.2d 1 (4th Cir. 1992) (recognizing the district court's ability to impose reasonable limits upon those who abuse the judicial system). The entry of a pre-filing injunction is appropriate when a plaintiff's lawsuits are (1) "duplicative and vexatious," (2) such that "he cannot have a reasonable expectation of prevailing;" and (3) have "caused needless expense and burdens to other parties and the court...." Tinsley v. Moore Business Forms, Inc., No. 93-2086, 1994 WL 249239, at *1 (4th Cir. June 9, 1994) (adopting factors enunciated in Safir v.

---

[9]Case No. 04 CVS 1706

United States Lines, Inc, 792 F.2d 19, 24 (2d Cir. 1986), cert denied, 479 U.S. 1099 (1987)). There are no exceptions for *pro se* litigants. Armstrong, 16 F. Supp. 2d at 620. Finally, although the court is given substantial discretion in crafting appropriate sanctions, a pre-filing injunction should be "'carefully tailored' to address the specific circumstances presented." Tinsley, 1994 WL 249239, at * 1.

### III.

In this instance, the Claytons have filed a total of *five* lawsuits against Ameriquest and instituted *five* separate bankruptcy claims in an effort to stall and prevent foreclosure on their home. These lawsuits all relate to the same series of events surrounding the foreclosure of the Claytons' home. None of these claims have been successful.[10] The Claytons' conduct rises to the level of litigation abuse that warrants a pre-filing injunction. See Williams v. PPG Industries, Inc., No. 101CV00459, 2003 WL 21223835, at * 2 (M.D.N.C. May 22, 2003) (enjoining plaintiffs for filing a fifth lawsuit against employer); Armstrong, 16 F. Supp. 2d at 620 (enjoining plaintiff for filing six repetitive and frivolous lawsuits against the same defendant); Odinkemelu v. Williams, No. 1:00CV00750, 2001 WL 34013620, at *9 (M.D.N.C. April 3, 2001) (enjoining plaintiff after third attempt to bring claims that are entirely without legal merit against same defendant); c.f.

---

[10] The actions have been dismissed voluntarily by the Claytons or have been dismissed by the judge presiding over that case.

7

Tinsley, 1994 WL 249239, at * 1-2 (agreeing that a pre-filing injunction of some sort was warranted when plaintiff had been advised by several courts that he failed to state a cause of action). Additionally, after being ordered on April 5, 2004 to dismiss all claims against Ameriquest pursuant to the settlement agreement, the Claytons filed another action in state court on September 7, 2004. Despite their argument to the contrary, it is clear from the Complaint in that case that the events giving rise to this new action are identical to those in all of their previous lawsuits. (See Def.'s Mtn for Pre-Filing Inj, Ex. A.) The Claytons insist on continuing to file suits against Ameriquest and its agents regardless of the lack of basis for their claims.

In addition to the number of lawsuits filed by the Claytons to which Ameriquest has been forced to respond, the Claytons have also filed countless motions in this and other cases. For example, the Claytons have improperly attempted to remove a state court action on two separate occasions, have filed four petitions for writ of supersedeas and/or motions for stay, filed at least six motions for injunctive relief, at least four motions for sanctions, and taken several appeals to the Court of Appeals for the Fourth Circuit.[11] Because of the Claytons' repeated motions, both Ameriquest and the judiciary, have expended a great amount of resources. None of these motions or appeals have been successful. Such litigation tactics further

---

[11] These examples are limited to those filings against Ameriquest, the Claytons have also filed numerous cases and motions against their prior mortgagees. (See, e.g., Def.'s Mtn for Pre-Filing Inj, Ex. A.)

8

support a pre-filing injunction.  See Williams, 2003 WL 21223835, at * 3 (criticizing use of litigation tactics that result in unnecessary burden and expense to opposing party and the court).  Because the Claytons have abused the judicial system through repetitive, frivolous lawsuits and motions, a pre-filing injunction is warranted.

III.

Because pre-filing injunctions limit access to the court, their terms must be "narrowly tailored" to address the specific circumstances presented.  Id. ("An absolute bar to filing actions would be 'patently unconstitutional.'") (citations omitted).  The Claytons have engaged in repeated litigation against Ameriquest based on essentially the same claims and allegations.  Thus a pre-filing injunction that restricts and ends the abusive litigation against Ameriquest, but does not shut off the Claytons' access to the courts is necessary to comply with the Fourth Circuit's holding in Tinsley. 1994 WL 249239, at *1-2 (overturning pre-filing injunction as overly broad because it prohibited the filing of all civil actions without permission of the court).  This pre-filing injunction will therefore be limited to cases against Ameriquest and its affiliates.  See, e.g., Armstrong, 16 F. Supp. 2d at 622 (plaintiff prohibited from filing any additional suits against defendant without permission of court); Williams, 2003 WL 21223835, at * 3 (granting request for pre-filing injunction prohibiting plaintiff from filing any more claims or papers in an employment related matter against defendant);  Farguson v. MBank Houston, N.A.,

808 F.2d 358, 360 (5th Cir. 1986) (enjoining plaintiff from filing suit "only to the same claims against the same defendants" without leave of the court). Requiring the Claytons to obtain leave before filing any action in federal court, against Ameriquest, or any agent, employee, or assignee of Ameriquest, that is related to the foreclosure of their home is reasonable in light of their extensive and abusive litigation history.

It is also within the authority of this court to enjoin the Claytons' from filing additional claims against Ameriquest in other courts, including state court. In Armstrong, the court found that "[g]iven Plaintiff's propensity to prance between the state and federal systems," it was also necessary for the Court to enjoin Plaintiff from pursuing the defendant further in the state court system. 16 F. Supp. 2d at 621; see also In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984) (defendants subjected to vexatious litigation in the federal courts are also entitled to protection in state courts). Given that they have filed numerous actions in this Court, the bankruptcy court, and several different state courts, the Claytons appear to have the same propensity. Thus, the Claytons will also be enjoined from filing any related action in any state court against Ameriquest, or any agent, employee, or assignee of Ameriquest, without first obtaining leave of this Court.

IV.

In summary, the Claytons, or anyone acting on their behalf, are hereby enjoined from filing any action without prior leave of this Court that:

10

(1) involves Ameriquest and/or its parent and subsidiary companies, predecessors, successors, assigns, officers, directors, affiliates, agents, employees, and present and former attorneys; **and**

(2) arises out of or is related in any way to the events surrounding the promissory note and deed of trust that was held by Ameriquest on Plaintiffs' former residence or the subsequent legal proceedings (including, without limitation, in this Court, the Court of Appeals for the Fourth Circuit, the United States Bankruptcy Court, the North Carolina Superior Court (Orange County), the North Carolina Court of Appeals, and the Supreme Court of North Carolina).

Leave of court will be forthcoming upon the Claytons' demonstrating through a properly filed motion that the proposed filing: (1) can survive a challenge under Rule 12 of the Federal Rules of Civil Procedure; (2) is not barred by principles of issue or claim preclusion; (3) is not repetitive or violative of a court order; and (4) is in compliance with Rule 11 of the Federal Rules of Civil Procedure. This order and injunction will not apply to the filing of timely notices of appeal from this court to the Court of Appeals if the papers are solely in furtherance of such appeals for this case (1:02CV00415).

This the day of October 26, 2005

      /s/ N. Carlton Tilley, Jr.
    United States District Judge

11

Case 1:02-cv-00415-NCT   Document 211   Filed 10/26/05   Page 11 of 11